THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF UTAH

NORTHERN DIVISION

* * * * * * * * * * * * * * * * * * * * * * * * * * *

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | Case No. 1:05CR47 DS |
| Plaintiff, | ) | |
| vs. | ) | OPINION AND ORDER ADDRESSING DEFENDANT'S MOTION TO SUPPRESS |
| JOSE OLIVER SANDOVAL, | ) | |
| Defendant. | ) | |

* * * * * * * * * * * * * * * * * * * * * * * * * * *

Jose Oliver Sandoval participated in a drug deal where he agreed to sell methamphetamine to a confidential informant. Police officers conducted surveillance of the deal. Sandoval left to get the drugs and on his way back, he was stopped, allegedly because of a cracked windshield. After he was arrested for arranging to distribute a controlled substance under Utah Code Annotated § 58-37-8, his vehicle was searched. Sandoval has moved that evidence obtained in that search be suppressed. We must decide whether the traffic stop was justified and whether there was probable cause to arrest Sandoval. The Court holds that the stop was justified and that there was probable cause to arrest, so the evidence should not be suppressed.

## I. INTRODUCTION

The Government and Sandoval have stipulated the following facts. On March 29, 2005, a Confidential Informant (CI) who was working for the Weber Morgan Narcotics Strike Force (WMNSF) met with Rigoberto Sanchez and his drug source, Jose Oliver Sandoval, to purchase several pounds of methamphetamine. The CI was provided with an electronic monitoring device and recorder by WMNSF for the meeting.

An agreement was reached which provided that Sandoval would travel to get three pounds of methamphetamine and bring it back for the CI to purchase at $9,500 per pound. Sandoval told the CI and Sanchez that it would take about 20 minutes to pick it up and bring it back. Sandoval then left, driving a blue and silver CK 1500 Chevrolet truck (Utah Temp tag K84802) which was registered to Sandoval.

The CI immediately called Agent Aaron Johnson, who was conducting surveillance of the deal, and told him that Sandoval was leaving in the aforementioned truck. As the truck passed Agent Johnson, he recognized the driver as Jose Oliver Sandoval. Law enforcement personnel followed Sandoval until he entered a residential neighborhood (which was approximately 1/4 mile square). Officers, not wanting to be seen, terminated their tail of Sandoval and lost sight of his vehicle for several minutes. Surveillance was set up around the perimeter of the neighborhood, and approximately ten minutes later surveillance officers saw Sandoval pull out of the residential neighborhood and head back in the direction of the meeting place.

WMNSF agents contacted Weber County Sheriff's Deputies Ferrin and Ricks, requesting that they conduct a traffic stop on Sandoval's truck for narcotic violations. Deputies began following Sandoval's truck and followed it for about one mile, during which time Agent Johnson passed Sandoval going the other direction and again identified Sandoval as the driver of the vehicle. While following Sandoval, Deputy Ferrin observed that Sandoval's windshield was broken and that the break extended into the driver's field of vision.

Deputies stopped Sandoval's truck, identified Sandoval via his driver's license, and advised him that he had been stopped for a cracked windshield. Deputy Ferrin asked Sandoval for permission to search his vehicle, which Sandoval declined. Agent Johnson arrived, placing Sandoval

under arrest for violating Utah Code 58-37-8 (Arranging to distribute a controlled substance). Sandoval's vehicle was then searched incident to arrest and without a search warrant.

## II.  DISCUSSION

### A. The Initial Traffic Stop Of Sandoval Was Lawful.

Sandoval argues that the traffic stop was not justified at its inception, because the defendant's cracked windshield was not a safety hazard and the officers did not observe any traffic violations. *U.S. v. Cervine*, 347 F.3d 865,870 (10th Cir. 2003) (Fourth Amendment requires an officer to observe a traffic or equipment violation or to have a reasonable suspicion that a traffic or equipment violation is occurring for a stop to be valid). Sandoval cites dicta from a footnote in a Utah Court of Appeals case for the proposition that Utah Code Ann. § 41-6-117 and § 41-6-155 do not cover all inspection violations, only those that pose a safety concern. *State v. Galvan,* 37 P.3d 1197, 1200, FN. 3 (Utah App. 2001). In the instant case, the crack was at the bottom of the windshield and only extended marginally into the driver's line of vision, so Sandoval argues that it was not a safety concern and that the traffic stop was not justified.

The *Galvan* case, however, actually allows for traffic stops because of cracked windshields, especially if the crack is 24 inches long or longer. *Id.* at 1200, 1202. The crack in Sandoval's windshield was clearly more than 24 inches, and the parties have stipulated that "Sandoval's windshield was broken and extended into the driver's field of vision . . . in violation of the Utah Traffic Code." (Ct. Doc. 31 at 4; Government Exhibit #3.)

The *Galvan* court specifically noted an unpublished Tenth Circuit opinion based on Utah law that explicitly held that an officer's observation of a crack in the windshield extending more than 24 inches across the windshield "[was] sufficient, standing alone, to establish probable

cause." *Id.* at 1200 ( *United States v. Vizcarra,* No. 99-4189, 2000 WL 663784, *2-*3 (10th Cir. May 22, 2000). This court holds that the officer's stop of Sandoval's vehicle was justified, and the evidence obtained from the resulting search should not be suppressed.

It should be noted that, in any case, the officer who stopped Sandoval knew from WMNSF agents that just minutes before, Sandoval was involved in arranging for the distribution of controlled substances, and that he was apparently on his way back to the meeting place to distribute/deliver the controlled substances. This knowledge was sufficient to provide "probable cause" for the traffic stop.

**B. Agent Johnson had probable cause to arrest Sandoval, and the subsequent search of Sandoval's vehicle was lawful incident to that arrest.**

Sandoval argues that the officers who were tailing him never saw him stop, exit his vehicle, or acquire any controlled substances. They had only a suspicion that he may have obtained a controlled substance when they lost sight of him. Sandoval contends that the passage of time during which Sandoval's vehicle was not under surveillance prevents the Government from establishing the essential nexus between Sandoval's vehicle and the suspected drugs. There was neither reasonable suspicion nor probable cause to arrest him. So all evidence obtained in the illegal search that followed should be suppressed. The Court disagrees.

The 10th Circuit has held that there is "probable cause" to arrest when "facts and circumstances within the officer's knowledge, and of which he has reasonably trustworthy information, are sufficient in themselves to warrant a man of reasonable caution in the belief that an offense has been or is being committed." *United States v. Valenzuela,* 365 F.3d 892, 896 (10th Cir. 2004).

Although surveillance officers lost visual contact with Sandoval for a short time, they had a great deal of trustworthy information that Sandoval had violated UCA § 58-37-8. They knew that Sandoval had agreed to supply a large quantity of a controlled substance to a confidential informant. Sandoval had said it would take him about 20 minutes to go, pick up the drugs, and return to the ranch. He drove directly to a small neighborhood about seven miles away, where he stayed for approximately ten minutes (he obviously stopped or surveillance officers would have seen him). He was driving back toward the ranch, and was about 1.5 miles away, when he was stopped and arrested.

Agent Johnson had sufficient trustworthy information to establish "probable cause" that Sandoval had violated Utah Code 58-37-8 by arranging to distribute a controlled substance. The methamphetamine that was found during the subsequent search of Sandoval's vehicle should not be suppressed.

### III.  CONCLUSION

For the foregoing reasons, Sandoval's Motion to Suppress is **DENIED**.

**IT IS SO ORDERED**.

DATED this 5th day of October, 2005.

> BY THE COURT:
>
> *David Sam*
>
> DAVID SAM
> SENIOR JUDGE
> UNITED STATES DISTRICT COURT